The 4th District Public Court of the State of Illinois has now convened and Honorable Thomas A. Beshears is presiding. Please be seated. Hello, counsel. The first case of the afternoon is case number 4-25-0219, Heren v. Beshears, et al. Counsel for Pelham, please identify yourself. Brian A. McAfee, et al. Thank you. And for Appley? Freddie A. McNamara. All right. Thank you. Mr. Lee, you may proceed with your argument. Afternoon, Justices. Counsel, may it please the Court, my name is Brian Lee. I represent the appellant in this matter, Brent Beshears, as trustee of the Brent Beshears Vocable Living Trust. Your Honors, this is a case where the circuit court abused its discretion in issuing a preliminary injunction. Further, the trial court also abused its discretion in refusing to limit the scope of that preliminary injunction. This Court should reverse the order granting the preliminary injunction and remand this matter for further proceedings. In the alternative, this Court should modify the preliminary injunction to prohibit use of the path in question by commercial hunting outfitters and others whose use exceeds the scope of any prescriptive easement that could be supported by the evidence. I'll be brief with the facts. This case is about two tracts of land that are situated in Calhoun County, Illinois. One, the Beshears property, is currently owned by my client. It's approximately 70 acres and has access from the south, from East Panther Creek Road, a public road. The second is the Heron property, owned by the plaintiffs. It's approximately 440 acres, located directly to the north of the Beshears property. To access the Heron property, the plaintiffs and their invitees use a path that is located on the Beshears property. I'll refer to that as the private road. A brief note about the standard of review here. All parties agree that the abuse of discretion standard applies to the court's issuance of the preliminary injunction. However, plaintiffs in their brief seek to have the court also impose the manifest way to the evidence standard with respect to certain findings made by the trial court in its order. However, plaintiffs in their brief also acknowledge that on a hearing for a preliminary injunction, the merits of the case are not decided, nor are any controversial facts decided. For that reason, the manifest way to the evidence standard is inappropriate here. The abuse of discretion standard is the only one that should apply. Simply put, the circuit court abuses discretion in issuing preliminary injunction. That preliminary injunction prevents the defendant from interfering with the use of the private road by plaintiffs or their invitees. And it's based on a finding that the plaintiffs made a requisite showing that there exists a prescriptive easement over the private road. However, plaintiffs have made no such showing. Prescriptive easement requires use of a path that... The question would be whether they've raised a fair question as to that. Is that fair? That is correct. Now, the case law makes clear that you don't need to prove the ultimate merits. Just raise a fair question as to the elements needed for a preliminary injunction. Plaintiffs fail to do so in the court below. Prescriptive easement requires use of a path that for 20 years has been adverse, continuous, uninterrupted, and exclusive. I would note that permissive use, which is the opposite of adverse, can be inferred from the neighborly relationship of the parties. Now, the circuit court's analysis and finding that the plaintiffs had met their burden for a preliminary injunction is riddled with multiple errors. The first of which is the application of a presumption of adverse use based on the origin of the path being unknown. However, the evidence below shows that the origin of the use of the private road for access over land owned by somebody else began in March of 1955, which is when a portion of the Beshears property was transferred to a couple I'll refer to as the Betters, to another couple I'll refer to as the Retzers. That was the point in time that the private road was used to access what is now called the Heron property over the property now known as the Beshears property, where the ownership was separate. That's when we have a record of when it was used, but this is a large landlocked piece of property. Presumably, there had to have been either common ownership or some access prior to what we've been able to develop in this record. So, Shirley Clonender was the witness who was able to provide the furthest back testimony as it pertains to the use of this private road, back to the late 30s. And so, there is certainly evidence that her family, the Better family, was using that path. But it's our contention that it was the transfer of a portion of the Beshears property in March of 1955 to the Retzers, where now you have someone crossing over somebody else's lane to get to another piece of property. And it's our position that that is when the use would have occurred, use over somebody else's property. But they were not commonly owned, it was owned by members of the same family? Different parcels owned by members of the same family? Different parcels owned by the same members of the Better family. Going back to... I don't think the record shows when the Betters obtained ownership of some of these parcels, but we do know that there was a transfer in March of 1955 from the Betters to the Retzers of a portion of the Beshears property. So that would be the first point of error in the Circuit Court's analysis. The second is with respect to Ms. Cloninger's testimony itself. In finding that the use of the private road was adverse, the Circuit Court noted that Ms. Cloninger testified that she quote-unquote automatically used the road and determined that that was sufficient to show that it was adverse. The problem with that is that it ignores other testimony by Ms. Cloninger that she used the private road under the assumption that the Retzers, the neighbors to the south, had granted permission to her parents and her brother who lived farther north. So if she's using that private road under that assumption that permission is given, her use can't be adverse and in no way suggests the existence of a prescriptive use. The Circuit Court noted that testimony but refused to work it into its analysis. What evidence is there that permission was expressly granted? To answer some questions, Justice Harris, it leads right into my third point. The third point of error by the Circuit Court is refusal to take statements attributed to Lorraine McKay into its analysis. Lorraine McKay was the woman who sold Beshears property to my client. Travis Tarrant was an individual who was the realtor that she contacted to list this property for sale. Ms. McKay did not testify at the hearing below. She was deceased by the time that this case was initiated. But Mr. Tarrant testified that in his meeting with Ms. McKay, she told him that her neighbors to the north, i.e. the Herons, used the private road to access the Heron property with permission. Now Mr. Tarrant did indicate that he was unsure of the specific language that Ms. McKay used, but he was sure that the essence of her communication to him was that the Herons had permission, were allowed to use that road to access the Heron property. That's evidence that was not objected to when it was given by Mr. Tarrant. Now plaintiff's counsel did object to statements by Ms. McKay that came in through Mr. Beshears when he testified, and the court allowed that testimony only for a limited purpose. But no such objections were made during Mr. Tarrant's testimony. So unobjected to hearsay can be given its natural probative effect. Must it be? The case law certainly says may. I don't know if the case law says must. But in this instance, without an objection, this evidence is in and of itself sufficient to rebut any presumption of adverse use and should have been applied by the circuit court, given that it was so crucial to the issue of whether or not use is adverse or presumed to be permissive. Because especially a couple of things make that the case. Number one, I think the evidence about the neighborly relationship between the Vedders and the Retzers is sufficient to raise the presumption of permissive use based on the neighborly relationship. Ms. Cloninger testified that these two couples knew each other. They were friends. They went to the same church. Ms. Cloninger testified that she even spent two weeks with the Retzers to help them cook and clean. These people were friendly. And that's the kind of evidence that's sufficient to raise this rebuttable presumption. But the trial court did not find the existence of such a neighborly relationship. Is that right? That's correct. And I think the trial court also hedged his bet a little bit to say even if it did apply, that there was evidence of adverse use that overcame it. And that's yet another error in the circuit court's analysis. Because Illinois case law is very clear, and we cited several cases in our brief, Monroe v. Shrake, Parker v. Rosenberg, Sullivan v. Durham, that says simply saying you use the path without explicit permission is insufficient to overcome a presumption of permissive use. And that's what we had in the court below. We didn't have testimony that we used this under a claim of right. We had the right to do this. It was merely that, well, with respect to the people who own the Beshears property before Mr. Beshears, we either, A, didn't have any conversations with them, or, B, we had conversations with them and the road never came up. We just used it. Under the case law, it's very clear when you have a permissive use, you have a presumption of that, just saying you used it is not enough to overcome that. So putting all that together, the refusal to take into account Ms. McKay's statements, Mr. Tarrant, without objection, the refusal to apply this presumption of permissive use based on the neighborly relationship, and the character of the plaintiff's quote-unquote adverse use testimony, that all leads to a conclusion that the plaintiffs have failed to raise a fair question that they have an ascertainable right here in the form of prescriptive easement and that they have a likelihood of success on the merits of proving that easement at a trial on the merits. And because the plaintiffs have failed to make that fair showing, the trial court abused its discretion in issuing the preliminary injunction. So as a result, this court should reverse the circuit court and its order granting preliminary injunction. Now, in the alternative, if this court disagrees and finds that the issuance of a preliminary injunction was proper, this court should nevertheless modify the preliminary injunction that was issued because it is far too broad and allows uses that go far beyond the scope of any prescriptive easement that could be established from the record below. Of course, in Illinois, the scope of a prescriptive easement is defined by the use that creates it. And Illinois courts are loathe to increase the usage of a prescriptive easement even if the proposed use is related to the original purpose. Illinois case law also makes clear that an increase in the use of a road, even by the same types of vehicles that create it, can be an impermissible expansion. And for that proposition, we cited several cases, including the McCann case, in which the court held that the circuit court was correct to prohibit a 60% increase in traffic over the road where the prescriptive easement was located. Simply put, the current use of the private road is an impermissible increase to the burden on the machiner's property. And the most egregious example of that is the use of the private road by Illinois trophy bow hunters, which I'll refer to as ITB, a commercial outfitter involved in deer hunting. When did that use begin? ITB first used the road, private road, in 2003, but then not again until 2021. So just the last several years, far too short a time to impact the scope of any prescriptive easement over the private road. ITB conducts hunting activities on the inherent property during three weeks of bow season, four weeks of shotgun season, a total of 25 days. They have typically four hunters and up to two guides that assist those hunters in hunting deer, which means that... The issue on an injunction is to hold the status quo, the last peaceable state of affairs, before there was conflict. And the conflict happened when the gate was locked. Correct. So the last peaceable state of affairs since 2021 included that use. So why would not a standard approach to a preliminary injunction say, we're going to keep it at that level of use while we sort out the legal rights in a more permanent way? And the answer is because a preliminary injunction isn't just granted as a matter of course. You have to meet the elements. You have to make the requisite showing. And if your showing is that, yeah, maybe you have enough to show that there's a prescriptive easement here, but if the evidence you've tendered to the circuit court is insufficient to show that there's any possibility that this use is going to fall within the scope of the prescriptive easement that's going to be granted, then a preliminary injunction should not be so broad as to encompass that activity. And I contend that that's what we have here. You've got approximately 300 trips per year just for people tied to the hunts that ITB has conducted on the Heron property. That is use that has only been going on continuously since 2021. That's compared to what number for the uses that predated that frequency of ITB use. Certainly. So there were individuals in the hearing below, Dennis Heron, Harold Heron, Norman Becker, who testified that they had been hunting the Heron property for over 20 years and using the private road to do so. The issue is those people are still hunting the Heron property today, still using the private road. So it's not a case where ITB, their use is the substitute for the use of the past hunters. It's in addition to the hunters that are still hunting today. You're just talking about hunters. There were other uses or have been other uses over the years of that road. The cattle operation, correct? That's correct. So do you have a number that we can use to compare your 300 trips per year for ITB hunting operations as compared to all of the uses on a per annum basis predating this conflict? I don't have a specific number, Your Honor, and it's difficult to put together for several reasons. Number one, people use approximations as to how often they were using the private road for certain activities. The other problem is, and this comes up with the farming activities that took place on the Heron property. Some of these activities don't last for a full 20 years, and so don't impact the scope of what the prescriptive easement would be had it been established. We have that shown with the CRP program. We have land in CRP that Norman Becker takes care of right now, but he's only been doing it since 2013, i.e. not for 20 years. The same is true with the testimony post-1958 about people living there using it for a residence. That doesn't extend 20 years in time, and 20 years is the key time here when we're talking about establishing a prescriptive easement, establishing its scope. But certainly in terms of just looking at it from terms of the hunting, there was no evidence below that would suggest that the private road was used anywhere close to what it is now based on the people that were hunting it in the past. Is each of those 300 trips into the property and out of the property, or is that 150 occasions? I would say that's 150 trips each way. And so that use alone, I think, establishes an impermissible expansion. So somewhere between less than one and one per day. That's true. But that's just for the guided hunts. Now, the evidence below shows that ITB doesn't just use the private road for these guided hunts. They use it throughout the year. They have a shed hunt in every March, and that's a three- to four-day event attended by six or seven people. They all use their private vehicles on the private road to attend that function. In addition, ITB uses the private road to access the Heron property for a litany of preparation projects for hunting. Hanging deer stands, cutting shooting lanes, cutting trails, marking those trails, checking trail cameras, maintaining and planting food plots. Your objection isn't to the character of the use of the prescriptive easement or claimed prescriptive easement. Your objection is to the quantity of the use. Primarily, yes. I would note that Mr. Becker is using heavy equipment to maintain and plant food plots, or was, and is now doing so to maintain a CRP ground. However, he's only been doing that since 2013, not 20 years. And the circuit court's justification for that current use was, again, the farming use that, again, lasted for less than 10. So I do think Mr. Becker's current use and ITB's current use, I think ITB uses a little machinery to do food plots now. The use of that heavy equipment, I think, is a permissible expansion. But certainly the biggest thrust is just the quantity of the vehicles that are using the private road. They're private vehicles. But I would note, too, that the private road we're talking about, it's not a paid road. It's a rocked two-track lane, and there's another photo of it in the record. And increasing the amount of the vehicles that are traveling over it by two times, three times, four times, it's going to impact that road. It's going to have it deteriorate more quickly. And it's the same reason we see a highway interstate get redone more than a residential road in a quiet neighborhood. The increase in vehicles alone is an increased burden on the Beshears property. And under Illinois law, because the increased use was not what created the easement, it's impermissible. ITB's certainly the biggest offender with respect to the increased use of the private road, but it's not the only increased use. As I mentioned, Mr. Becker, he's only been maintaining CRP ground for less than 20 years. He's currently doing that. Dennis Herron, one of the hunters mentioned previously, he went from hunting on the Herron property seven times a year to now he hunts it approximately 57 times a year because in the last few years he picked up bogeys. So, once again, you're multiplying the times that he's hunting by eight times. That leads to an increase in the use of the private road. All of these together, again, Illinois law is very clear. You take the use that established it, and you go no further. Here we have a very open-ended preliminary injunction that, in essence, gives the plaintiffs carte blanche to do whatever they want. There's no limitation in the wording of that order. And so they could roll in as many dump trucks, as many bulldozers, as many semi-trailers as they see fit, and according to the circuit court, just because for a couple of years they used farming implements, that's okay. Similarly, the Herrons could decide, you know what, we want to make more money. Let's get two outfitters, let's get three outfitters to come in at different times of the year. It could be a never-ending stream of personal vehicles to hunt. They could put a park in on their property and allow people to just come in whenever they so please. Thousands of trips, all to the detriment of the Beshears property, no limitation whatsoever. And that's why my client implores this court, even if it finds that there's sufficient basis for the issuance of a preliminary injunction, to limit the scope of that preliminary injunction to prohibit ITB from using the road, from prohibiting these other uses that are occurring over the private road. I see that my time is up. Thank you. All right. Thank you, Mr. Lee. You'll have time to rebuttal Mr. Hamilton. Thank you, Your Honor. Good afternoon. May it please the court. My name is Riley Hamilton, and I represent the plaintiffs' appellees Patricia Herron and Mary Ann Herron. The defendant has presented two main questions to this court. Was the circuit court within its discretion to grant this preliminary injunction? And was the circuit court within its discretion to include plaintiffs' invitees within the scope of that preliminary injunction? We believe that in consideration of the evidence in the applicable case law, the answer to both those questions is a resounding yes. And I want to note that these requests by the defendant to either remove this preliminary injunction or modify it, I don't believe they are proper requests, procedurally speaking. The case law dictates that the purpose of the preliminary injunction is to preserve the status quo. There can be no dispute about the status quo in this situation. The plaintiffs have been using that private road for 60 years. The biggest complaint in the latter part of the defendant's brief is about the ITB group. Again, it's undisputed they've been using this since 2021. We know the status quo, and the circuit court accomplished the purpose of the preliminary injunction by including both the plaintiffs and their invitees. Well, what about the frequency? Shouldn't that be taken into account? The frequency of usage? I think it can, Your Honor, and I would direct the court to really closely review some of those cases that the defendant cited to support that position. The counsel mentioned the McCann v. Dunteman case. The facts of that case are very important. That was a situation where the owner of the dominant estate was attempting to use the same road for access to neighboring lots, meaning they tried to use the same easement for neighboring properties that were never part of the actual easement that was created. That's not the case here. Some of the other cases cited to support that are also very distinguishable. He relies on Ornaga and Limestone, just as the circuit court distinguished in its order. The facts there are starkly different. In Ornaga, the easement was a 10-inch wide drainage tile. The plaintiffs sought to expand that to 24 to 30 inches. That is a physical alteration of the easement. Limestone involved a situation where it was a narrow winding road that the public actually used for access for recreational activities. The plaintiffs came in and sought to expand the road so that they could, quote, use bulldozers and flatbed trucks to haul 200 to 300,000 tons of limestone across that road. This is extremely different from the situation we're talking about presently. As for the evidence, is that just a matter of degree, but the same principle, that an increased use can be outside what might otherwise be an appropriate prescriptive easement? Well, Your Honor, I think the case that's more analogous to the situation is the Conine course out of this district that the circuit court cited as persuasive. I won't go through the facts there, but I think the intent behind it is that the prior use in that case, as well as in this case, and even more so in this case, the prior uses that created the prescriptive easement are far more burdensome than this intended use. I won't go through that case, but I'll give you some of these prior uses that you've seen in the circuit court's order. They start raising cattle and farming in 1958. They do that until at least 2007. That involves checking on the cattle three to four times a week. That involves hauling them by trailers, moving them around. They're moving farming equipment up and down this road. There's hunting going on, all different types of hunting for those 50 years. There's large-scale mowing going on as part of the CRP program. They're moving large lawn care equipment up and down this road. All of the prior uses far exceed this current use as far as a burden on the property. And as for the supposed increased burden on the defendant's property, I don't think his evidence really supports that. If you look at it, his brief cites the three instances of the defendant's own testimony where he perceived an increased burden. The one instance he goes into detail on was the herons, the parties, driving down the road, not their invitees. And he specifically mentions as much. And I'll also note the circuit court's finding that, you know, the issue, it seems to me, is moving this deer off the defendant's land. He acknowledged in his testimony he mainly bought this land to hunt and for some other purposes. The court found he was just as likely with the way the road is set up that when they drive north of the road, it pushes the deer north. When they come back south, it pushes them just back south. So I really do not think there's enough evidence to illustrate an abuse of discretion by the circuit court in making that finding. The other case that defendant cites to support the impermissible increased burden is this Schultz Pecan out of the 2nd District. Now, there the defendant had filed a post-trial motion which asserted that if the prescriptive easement was established, the use must be restricted to that use. That motion was denied largely because the court found the evidence was speculative. It notes at the very end of the opinion and essentially says, if this becomes an actual issue that we have concrete evidence, we'll look at it then. I don't believe that's appropriate at this stage. We're at the preliminary injunction stage. So I do not believe the case law that counsel cites to supports that position. Now, as for the prescriptive easement itself, the analysis of that all starts with the presumption of adversity. The case law is clear on that. The 3rd District case, Faulkner v. Villager, tells us that where the property has been in an open, uninterrupted, continuous, and exclusive manner for the requisite period, there is a presumption of adversity. The circuit court's order highlights how each of those elements is met. The presumption of adversity is what governs. There's some allegations by the defendant about, well, the origin of the way is now known. And the origin of the way is an important component if you look at the Illinois Supreme Court's opinion and nationwide. The circuit court determined here that the origin of the way was not known. And if you go through the defendant's theory on this subject, you'll see the fallacy of it. The earliest testimony we have, chronologically speaking, is the Ms. Shirley Cloninger. She testifies that when she was a child in the 1940s and 50s, she was just automatically using the road. That testimony implies the road already existed at that time. We don't have any evidence prior to then that can establish when this private road was established as the origin of the way. Therefore, that's what dictates this. Presumption of analysis, there is no need to consider a presumption of permission. And again, if you look at the cited evidence about this presumption of permission, it's scarce. The testimony cited by counsel is Shirley Cloninger's testimony again. There's one single line on R-728 where she states, as far as a presumption of permission, yeah, I suppose, I didn't hear them, but I mean, and then her sentence is cut off. I'd implore the court to look at that part of the record. She then answers the very next question where she states she did not know if any actual permission was granted. She also stated during an earlier hearing on R-405 and R-410, she repeatedly states, I don't know, when she's questioned about the topic of permission by both counsel and the court itself. This testimony from Travis Tarrant I also think doesn't really support this case to any significant degree. On R-661 in the record, he specifically admits that he did not actually recall Lorraine McKay, who was the predecessor in title to the defendant, ever stating she gave permission to the plaintiffs. So this purported evidence is conflicting at best. And as for the unobjected to testimony, there was very clearly an objection made by counsel on page R-266, and the court ruled on that. The circuit court made it clear it would not allow any such statement for the proof of the truth matter asserted, that any such statement was not available to prove permissive use. That's C-108 and R-268. I don't see how this testimony supports any evidence of permissive use when you weigh that against, which the circuit court did, all the evidence of adverse use. We had multiple people testifying on the plaintiff's behalf to just automatically using the road. You had Patricia Herron testify that the predecessor in title, again, Lorraine McKay, witnessed them countless times using this road and never once objected. That follows the page B loom holding from the 5th District where it says, to the adverse or hostile, the use must be within the knowledge and acquiescence of the serving owner, but without their permission. Again, the prior owner of this property had never once objected. The defendant himself testified that my clients were, quote, using the land like they owned it, because he placed a gate on the lock, a lock on the gate, and they cut that lock. And that's on C-108. So I do not see how there can be any sort of contention that the circuit court abused its discretion in following a presumption of adversity and also finding that, regardless of any alleged permission, the evidence of adverse use overcomes that presumptive evidence. Your theory below that was easement by prescription? Yes, Your Honor. Do you agree with counsel that we know when these parcels were commonly owned? There is a timeline in the circuit court's order that I think does as best a job we can. It kind of hashing that out. I had to build my own timeline to try to get my head around it, because it is a little bit conflicting. But this kind of touches on the lost grant theory that the court found in Rush v. Collins and that the circuit court cited in its order that at some point in time, the way they divvied up these lands, there had to have been an agreement in place for people to be accessed that land, and the idea being whatever documentation there was has since been lost. You never advanced a theory based on the common ownership, a different easement theory? I'm sorry, I don't know what you mean by that, Your Honor. You've never advanced a theory of the easement arising by something other than prescription? So there was a different counsel on the underlying proceedings, and I believe they had advanced a theory of a necessary easement, but I don't believe anything to what you're asking about. Okay, but that was not the theory by the time you went to hearing? Correct, Your Honor. So again, as for the granting of the prolary injunction, the circuit court did its job. It preserved the status quo until we can have a final determination on the merits of this case, and I do not believe that any of the case law or the testimony cited by defendant supports this theory that they have expanded past the use which created the prescriptive easement. You have all kinds of prior uses that are far more burdensome, and I don't think it's logical for the court to have to be tied to one initial 20-year period. We have 60 years of prescriptive use. Why can we not consider all of that? We have 50 years of hunting. We have 50 years of farming. I don't know any case law that states we are bound to that initial 20-year period as it pertains to this topic, as it pertains to the analysis of do the previous uses exceed the scope? But you are, I mean, there has to be a 20-year period within that 60. Do you agree with that? Absolutely, Your Honor.  So with that, Your Honors, I do not believe that the defendants have met their burden of illustrating an abuse of discretion. I think the scope of the prolary injunction is proper at this stage to allow this court, to allow the circuit court to proceed to a final determination on the merits. And I think in asking for the defendant's request to ask this court to remove that prolary injunction or to modify it is not a proper request under the case law. Therefore, we're asking the circuit court's decision be affirmed, and I appreciate your time. Thank you. Thank you, Mr. Hamilton. Mr. Duggee, rebuttal argument? Thank you, Justices. Opposing counsel seeks to have this court just rubber stamp the preliminary injunction just based on the idea that it's preserving the status quo. But again, more is required. If there wasn't, there would be a preliminary injunction in almost every case. But preliminary injunction hearing, you have to make requisite showings. You have to raise a fair question that you have an ascertainable right in need of protection. You have to show, you have to raise a fair question that you have a likelihood of success on the merits. Plaintiffs did not do that in the court below. What case law do you rely on to say that if the court finds that there has been a fair question raised on those substantive elements, that its remedy should be something other than the status quo? In other words, changing the use, limiting the use from what it had been at the time of the hearing? I'm sorry, Justice, if you could reword that question. I didn't quite understand it. If the court finds that a fair question has been raised on the elements of the request for a preliminary injunction, your issue is with the relief, the scope of the injunction. What's your authority that says that the injunction should change the nature of the use from the status quo that existed prior to the events in question? I would just point back to the case law that, again, requires a likelihood of success on the merits, a fair show. I'm talking about the relief, the remedy. Isn't the remedy inherently restoring the status quo? Your Honor, I think if the court finds that there has not been a likelihood of success on the merits shown, then we're done. I get that. But if the court finds that there has been, what authority says that the relief should be changing the status quo? I guess I'm, in essence, bifurcating the issue. I guess if the court finds that there's been a fair question raised as to certain uses but not to others, then I think under this court's case law, it's required to uphold the preliminary injunction, but only to the extent that plaintiffs have shown a likelihood of success as to certain uses and not others. Again, counsel references the McCain case and tries to distinguish it based on the fact that in that case, people were, instead of going to one parcel, going to the other. That's not the increased burden. The increased burden isn't depending on where you're going. It's how often you were using it. In that case, the court noted that there was going to be a 60% increase in traffic. That's the increased burden. That's why McCain is applicable to this appeal. Counsel referenced O'Norgen and Limestone. I'll concede that those cases are factually dissimilar. I did not cite them for their facts. I cited them just for the broad propositions of law that you cannot expand a prescriptive easement past the scope of the use that created it. Counsel, in referencing Ms. Klonderer's testimony, I think takes it out of order. Ms. Klonderer testified twice in the hearing below, once in Plano's case, once in the defense case, and it was in the defense's case where she gave the definitive testimony that she presumed that her use, that her family's use of that private road was with the permission of the Retzers, the neighbors to the south. She certainly did testify that she didn't have any direct knowledge of that permission, but acting, using the private road under that assumption, that's enough to defeat the idea that her use was adverse. If you accept one piece of testimony and reject another, okay, so at the final hearing in this case, that's what would have to happen. The judge would have to decide which is credited, right? But at the preliminary injunction stage, isn't it sufficient to say a fair question is raised when her earlier testimony said that she didn't know? I think that her later testimony should be viewed as clarifying her previous issues where she said, you know, I didn't know this, I didn't know that. She was asked about it again. She gave that testimony. I would note, too, that Ms. Klonderer's testimony about quote-unquote automatically using the road in and of itself doesn't even suggest adverse use. You can automatically use something with the mindset that you're doing it with somebody's permission. Mr. Tarrant's testimony, I think, again, I think what plaintiff's counsel is trying to do is indicate that Mr. Tarrant was unsure about the gist of Ms. McKay's statements. He might have been unsure about the specific language that she used, but he was sure and testified as much that Ms. McKay told him that the Herons had permission or they were allowed in some way voice the fact that they could use this road, they had permission to do so. And that bears out in the record. I see that my time is up. Thank you. All right. Thank you, Mr. Lee. Thank you both. Excellent arguments. The court will take the case under advisement and will issue a written decision.